And we'll hear the next case, Jemmott v. NYC Transit Authority. Good morning, Your Honors. My name is Joel Gluck. It pleases the Court. I am here on behalf of the appellant, Dennis Jemmott. The issue in this case is, I think, the balance between, with a pro se litigant, how much is not enough and how much is too much. Why should we treat him as a pro se litigant? You represented him. Well, I represented him. You started representing him on May 1, 2013. Yes, Your Honors. And that was a complaint that another justice found duplicative and untimely. Right. And then he proceeded pro se on his original complaint. You were his attorney during that period of time. That had to do with whether we were able to maintain contact with each other, which we were not for exigent circumstances. But the fact remains that when he filed the pro se complaint, the pro se complaint was on the form provided him by the District Court. Right. That was in April of 2013. Yes. And he attached to that, not a few documents, but many documents. And I think this Court can see that the District Court abused its discretion when it found that unintelligible under Rule 8A, when in fact it clearly gives fair . . . Did you tell the district judge at the last meeting that you now represented Jemmett on May 18th? Did you tell the judge that? Yes. And that was with respect to . . . But you had represented him for two years prior to that. In another action that we started and that was dismissed. Did you tell Judge Kuntz that you had represented him in the earlier action and in that case had been dismissed? Yes. He was aware of that. He was aware of that. Yes. And . . . What sense did it make to say that you now represented him when you had done it earlier? Because he, after we had brought the . . . I had brought the complaint and the complaint was deemed duplicative, he proceeded with the pro se and there had been no contact with him by my office for a significant period of time. And he called me with respect to another matter, which has nothing to do with this proceeding, and he said that there's a motion to dismiss with respect to the complaint that I filed. And he asked me to represent him on that, and I did. And in the course of that, I . . . Did you ask the judge in connection with that to consider the Brody, the dismissed complaint? Yes, I did. The court found that it had not been served and it had not been served in accordance with the federal rules. However, the basis for the district court's opinion had to do with the original complaint being unintelligible. But I don't think that a fair reading of that complaint . . . The complaint provided no recitation of facts or . . . in terms of the body of the complaint, right? And it relied exclusively on the attached documents? Your Honor, that is partially true, but the attached documents are to be incorporated into the . . . Sixty-nine pages of documents, some of which dated back for, I don't know, 20 years, and Is that a short and plain statement of the claim? No, Your Honor, but it provides sufficient specificity to meet . . . Are our judges supposed to weed through the 69 pages of attachments and figure out what the claim is? No, I think the claim is clear on its face. The claim is clear because the very document that he attaches is the decision of the State Division of Human Rights, which states very clearly that what Mr. Jamad is alleging is that he was an African-American supervisor, supervising line workers who taunted him and bullied him and were insubordinate, and that both management and the union abetted this situation, and it had gone on for years. That's not an issue under 12b-6 or under Rule 56. The issue is, does that give fair notice to the Transit Authority that this is what the complaint is? And the Transit Authority cannot say they didn't have fair notice because they submitted a rebuttal to the charge before the State Division of Human Rights, and that's incorporated  And he's filed all of these exhibits, and the judge now has to parse through and figure out, well, which exhibits are we talking about here? Which one? You still have the problem. I mean, you know, it could have been solved in a three-page complaint, this whole thing. And would the three-page complaint have had enough specificity or not? Why wasn't that done? I mean, Your Honor, my position is when the documents after the form complaint includes a letter to the EEO investigator of the Transit Authority stating, this is my second complaint on continuous racial bullying at the Transit Authority, that's fair notice. How does the Transit Authority prepare an answer to a complaint that simply attaches 69 pages of disparate exhibits and documents? They didn't have difficulty, Your Honors, and they moved, they were able to present arguments that some of the incidents were time barred, some of the claims were time barred. The court didn't reach that. The court simply said, this is unintelligible, but it's not, Your Honor. In other words, you're saying they filed an answer to the complaint? No, Your Honor, what I'm saying is they made a motion to dismiss. Yes. And the motion to dismiss also sounded under 12b-6, stating that there were claims that were time barred, there were claims that, for which there had not been exhaustion of, alleged exhaustion of administrative remedies. So they didn't have difficulty. Your Honor, the fact is, you're going to say that the fact that they moved to dismiss and came up with various reasons for that is evidence that the complaint itself was a short and plain statement of the facts. Your Honor, if it were just the form submitted without the annexed documents, I would say it isn't sufficient. But the annexed documents are incorporated and they present a claim, and the claim they have is race and age and alleged disability. So I think that there is, under the test of fair notice, clearly sufficiency in the complaint that it was an abuse of the court's discretion to dismiss it under 8a. Thank you. We've reserved some time for a follow-up. We'll hear from the city. Good morning, Your Honors. My name is Kristin Nolan on behalf of the New York City Transit Authority. The issue here is very simple. The plaintiff had over two years and multiple chances to submit a viable complaint. He never did so. He was represented by counsel. The record is clear for much of this litigation. The lower court properly exercises discretion in dismissing the case after he was given numerous chances to submit a viable complaint when he didn't do it. Thank you. Now, is there not a way in which to read the record where one might conclude that Judge Kuntz did not regard or review the pro se complaint in the liberal fashion that we required? Your Honor, I would say Judge Kuntz gave the pro se an opportunity to amend the complaint, which he did. Then, it would just be impossible, as I believe Judge Kuntz properly used his discretion in determining, to go through over 70 pages of attachments. I believe there are 27 typewritten pages that were just impossible for the judge to understand what the plaintiff was saying. Subsequent to that, Mr. Gluck appeared and he submitted a third . . . I don't know if you'd call it a complaint or a third submission in the case where he attached all the previous complaints as exhibits and basically submitted that to the court, saying somewhere within these three complaints is a claim. Well, as I understand it from reading the complaint, I agree that there's disparate things, but if you take the time, there's at least one person whom the plaintiff supervised, Mr. Fedorov and others who are described as white Russians, who use racial epithets and so on. When he complained to his supervisors about the fact that these supervisees were engaged in racially hostile conduct and making racially hostile statements, they didn't do anything about it. Is that a fair recitation of what happened or what is alleged to have happened? It's difficult to discern what's being alleged. You know, and it's easy . . . Is that an unfair recitation? I would say it's easy. What counsel has done is call through various sentences on appeal to put together yet another argument of what you put forth. What are we supposed to do when we've got what is a district court judge to do when he or she has got a pro se litigant who is not trained, who works for the MTA, and is trying to make an allegation of racial discrimination? But he's not doing it in the best way. Sure. Don't we require some additional work? Absolutely. I would agree with that, but this is not that case. In this case, it was not a pro se. He was represented by Mr. Gluck, both in the Brody complaint and also before Judge Coons. You're making the point that Mr. Gluck represented him 15 days after the first complaint was filed, when he filed the other complaint that went before Judge Brody. Right. But Mr. Gluck is saying he represented him in connection with that case, but not this case. Is that a distinction? Your Honor, the record actually reflects that he did represent Mr. Jabot in the second case as well. Throughout the second case? In both cases. In both cases, yes. But throughout the second case? He disappeared. That's the issue here. I tried to contact him. I spoke to him on the phone with respect to— Even Judge Coons describes the first two complaints as pro se complaints, so he viewed at least the second complaint as a pro se complaint, and then he disregards the Brody complaint, the complaint that had been dismissed by Judge Brody, because it was dismissed. Right. The Brody complaint was dismissed under Mr. Gluck's counsel, and Mr. Gluck then appealed that to the Second Circuit, and it was again dismissed, and he's now trying to use that complaint again in another litigation. And you don't think it was an abuse for Judge Coons to say you can't rely on this complaint that was dismissed two years ago? No, because Mr. Gluck had ample time to bring a viable complaint. He had years, and it's prejudicial to the transit authority to now— At that point, you're saying he could have drafted a new complaint? Oh, wait. Right. Initially, at the point where in the second complaint when Mr. Javat was afforded an opportunity to amend, had Mr. Gluck come in then and submitted another complaint, that would have been fine. But it's now years later. It's several years, and we have witnesses whose recollections fail and people retire, and it's not fair to force the transit authority to defend a case at this point after so many years have passed. Thank you. Thank you. We'll hear the rebuttal. Mr. Gluck, I have a question. Yes. When you filed the May 1 complaint in May of 2013, you were aware of the Pro Se complaint. Presumably he showed you that, right? No. You weren't aware of the fact that it had been filed? No. He had called me and said this was the time I had received it, and I prepared the complaint as quickly as I could. He was at that time, I believe, in Florida. Let me answer my question directly. When you prepared the Brody complaint, were you aware of the Pro Se complaint that he had already filed? No. I became aware of it when I searched the docket. I was not aware of it at the time. When did you search the docket? I can't tell you that, Your Honor. Well, in relation to filing the complaint, before you filed the complaint, in the Brody case, did you search the docket? He hadn't told me he had filed his own complaint at that time. If he had, then I would have sought to amend that complaint with the one I was preparing, but he had not told me that. When did you learn of the first complaint? I learned of the first complaint when I reviewed the docket on the complaint that I had filed. Right. All right. Then I found he had filed another complaint, and the court had— When you reviewed that, you claimed that you were now representing him in May of 2015. That complaint that you filed in the Brody case was May of 2013. Somewhere in that two-year period, you reviewed the docket and came to the— Well, the court's decision in the Brody complaint was that it was duplicative and untimely, so he had an original complaint that he had filed, which I then reviewed. Okay. You were aware of it when that case was dismissed in September of 2014? Yes. Then he came to me and said, the transit authority, he said, I wanted to proceed pro se. Then he told me that the transit authority had made a motion to dismiss, and the court was giving him an opportunity to submit opposing papers, and then he asked me to represent him again. When you found out about the first complaint, the pro se complaint, had the amended complaint been filed yet? Yes, the amended complaint was filed. It was filed in July of 2014. Yes, I believe. It is possible that the amended complaint, that I was aware of the amended complaint. I can't tell that from— No, you were aware of both complaints. At some point, you were aware of both the first complaint and the amended complaint. That there was a duplicative complaint, yes. Right, but were you aware of the fact that the amended complaint was filed after you filed the Brody complaint? And that's what is peculiar to me, why you didn't file an amended complaint. Because he chose to do that on his own and didn't tell me he was doing that. But you still represented him. Technically, you represented him. Technically, I represented him, yes. So there was a notice of appearance, and then what effectively looks like a pro se complaint, but what on the record is a counsel complaint, is filed. That's what we've got to conclude. Is that correct? Yes, that would not be— So you don't get the benefit, or your client doesn't get the benefit of the pro se, the liberal reading, because we've got to view this as a counsel complaint. But the first complaint was dismissed by the district court in part as duplicative. So if it's duplicative, then I would say the pro se plaintiff does get the benefit of a liberal construction. So you don't get the benefit of a lawyer and a liberal construction? No, not if the court says it's duplicative. If the court says we have an original complaint signed by a pro se litigant, then what should, I presume, have happened at that point is the court should have said, Mr. Jomot, you need to go and contact your prior attorney, or, yes, if Mr. Jomot had gotten in touch with me or I was able to get in touch with him at that point, then he could have filed an amended complaint or incorporated my original complaint. That did not happen. But he filed an amended complaint, and I think the amended—and I disagree with the district court— the amended complaint on page 4 states very clearly that he was harassed, bullied, and forced to retire in November of 2011. What joint appendix page? That is page 102. And next to that is a nine-page statement—fortunately, it's double-spaced—that does refer to specific incidents. Yes, some of these go back 30 years, but others are recent in time, and they relate to the essence of the complaint, which was racial harassment, bullying, and taunting on the part of his subordinates. And whether that was in the Brody complaint or not in the Brody complaint, it did not take the court a great deal of difficulty to go through it and say, yes, there is a claim at least for a hostile work environment on the basis of race. Why didn't you go before Judge Koontz after the amended complaint was filed, after the first complaint had been dismissed, after the Brody complaint had been dismissed, and say, we have a viable cause of action here. I want to file an amended complaint that simplifies this, and then do that, rather than waiting two years until 2015, and then filing some kind of a filing that contained all the prior pleadings and said, Judge, you figured it, you figured it out, rather than giving him a short, plain statement of the facts at some point over the two years in question. Well, because, Your Honor, to be honest, Mr. Jomot was in Florida. He was not in regular contact with my office. However, he contacted me, and the docket indicates a number of conferences, which he did not ask me to attend, had he asked me to attend either. And again, so our problem is that he is counseled, and that he made a decision not to have his counsel present, and so we have got to review the record with that in mind. The entire thrust of your brief is this is really effectively a pro se litigant. Here what we're hearing is that, in effect, he was counseled but disregarded or neglected his counsel. Well, Your Honor, but if we look at the original pro se complaint, the pro se complaint contains the essence of his charge against the defendant, which doesn't need repeating, and it has specific references, and the amended complaint clearly parses those out and does have an even clearer statement. So the question is whether at some point he was represented or not represented when the court says that the complaint is unintelligible and dismisses it under 8A. That's an abuse of legislation. You're aligned on 112 through 116, 117. You mean of the record? Yes, Your Honor. Thank you. Thank you. We'll reserve the session.